**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith P. Nance, | No. CV 12-0734-PHX-RCB (DKD) |
| Plaintiff, | **O R D E R** |
| vs. | |
| Allen Miser, et al., | |
| Defendants. | |

Plaintiff Keith P. Nance, who is confined in the Arizona State Prison Complex, South Unit, in Florence, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. In an Order filed on May 31, 2012, the Court ordered Defendants Miser and Patton to answer Plaintiff's religious exercise and equal protection claims based on the denial of a Halal diet and dismissed the remaining claims and Defendants without prejudice.  (Doc. 6.)  Plaintiff has filed a motion to amend, a First Amended Complaint, and a motion for clarification. (Doc. 8-10.)  Defendants Miser and Patton have waived service and filed a motion for clarification.  (Doc. 11-13.)

Plaintiff seeks clarification of the May 31, 2012 Order.  (Doc. 10.)  Because Plaintiff's First Amended Complaint supercedes the original Complaint in its entirety, and is screened below, Plaintiff's motion for clarification of the prior screening order will be denied as moot. Plaintiff's motion for leave to amend will also be denied as moot.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his pleading once as a matter course within 21 days after serving it, or if the pleading is one to which a responsive pleading is

TERMPSREF

required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Plaintiff has not previously amended his Complaint and he filed his First Amended Complaint prior to service of the Complaint.  Accordingly, Plaintiff was not required to seek leave of Court to amend.

Defendants Miser and Patton have also filed a motion for clarification of the prior screening order but in which they principally ask the Court to screen the First Amended Complaint.  (Doc. 13.)  That motion will be granted to the extent that the Court screens the First Amended Complaint herein.  The Court will order Defendants Miser, Vicklund, Linderman, and Patton to answer Plaintiff's religious exercise and equal protection claims in the First Amended Complaint and will dismiss the remaining claims.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for

relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.    First Amended Complaint

Plaintiff alleges three counts for violation of his religious exercise, equal protection, and due process rights. Plaintiff sues the following current or former employees of the Arizona Department of Corrections (ADC): Rynning Unit Chaplain Allen Miser; Eyman Complex Senior Chaplain A. Vicklund; Pastoral Administrator Mike Linderman; and Deputy Director of Offender Operations Robert Patton. Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

Each of Plaintiff's claims are predicated on the following facts: Plaintiff is a Muslim. Plaintiff served a sentence at ADC between 2002 and 2008 during which he received a religious diet[1] and shaving waiver.

In September 2010, Plaintiff returned to prison.[2] On October 31, 2010, Chaplain Miser interviewed Plaintiff regarding his request for a Halal diet and shaving waiver. Plaintiff told Miser that a kosher diet might acceptable in lieu of a Halal diet until ADC modified its policy to provide for a Halal diet for Muslim inmates. Plaintiff contacted Muslim scholars and asked if a kosher diet was religiously acceptable in lieu of a Halal diet.

---

[1]  Plaintiff does not allege that he received a Halal diet.

[2]  See http://www.azcorrections.gov/Inmate_DataSearch/results_Minh.aspx?Inmate Number =168108&LastName=NANCE&FNMI=K&SearchType=SearchInet (last visited May 23, 2012).

After Plaintiff's interview by Miser, he received a response from the scholars telling him that a kosher diet was not an acceptable alternative.

At some point, Plaintiff informed Miser that a kosher diet would not be religiously acceptable and attempted to explain the difference between a kosher and a Halal diet. Miser asked Plaintiff, "'how as a Muslim can you be convicted of child molestation?'" (Doc. 9 at 3.) Plaintiff asked Miser for the source of his information, complained that Miser's comment was discriminatory, and told Miser that he would formally complain. He also asked Miser what his conviction had to do with his religious requests.[3] Plaintiff asked Miser to check his records because they would reflect that he had received a religious diet and shaving waiver during his prior incarceration. Miser made notes, had Plaintiff sign the form, and told Plaintiff that he would forward his findings to Senior Chaplain Vicklund for final approval.

On December 1, 2010, Plaintiff received a response from Miser, which denied his request.[4] (Id. at 5.) Miser's response stated that "'based upon an interview this office cannot currently identify a sincere religious reason for your request that is consistent with your religious preference. If you can provide further information to establish a sincere religious reason for your request it will be reviewed again.'" (Id. at 3a.) On December 2, 2010, Plaintiff filed an informal grievance. (Id. at 5.)

On December 10, 2010, Plaintiff filed a formal grievance. On February 24, 2011, he received a response from Assistant Deputy Warden Faye, stating that "'Chaplain Miser advised he interviewed you and based upon that interview your request was denied. This due to them[5] not being able to identify a sincere religious reason for your request consistent with your religious preference.'" (Id. at 3a) (internal quotation marks omitted). Plaintiff contends

_____

[3] Plaintiff denies that he has been convicted of child molestation.

[4] Plaintiff's description of these events differ slightly in Count I and Count III regarding when Plaintiff received the response. The Court recites the more specific portions of his allegations.

[5] In Count III, Plaintiff alleges that Faye quoted Miser as stating "they" could not identify a sincere religious reason. (Id. at 5a.)

that the reference to "them" in Faye's response referred to Miser and his supervisor, Vicklund.  (Id. at 3d.)  Faye further stated that Chaplain Miser had advised that "'he did not know exactly what the sincerity problem was but that he believed because you were released and came back on a new charge [that] shows that you were not consistent in practicing your faith.'"  (Id. at 3b.)  On May 25, 2011, Director Ryan and Pastoral Administrator Linderman "upheld the grievance authorizing a religious diet and shaving waiver"; Plaintiff received no response regarding Miser's comment.  (Id.)  Plaintiff still is not receiving a Halal diet.

**Vicklund**

On November 5, 2010, Plaintiff forwarded an inmate letter to Senior Chaplain Vicklund regarding Miser's comments.  (Id. at 3c.)  Plaintiff received no response.  On December 8, 2010, Plaintiff filed formal grievance A37-119-010, which challenged the denial of a Halal diet and ADC's failure to employ qualified staff and volunteers to advise ADC about the requirements of a Muslim diet.  (Id. at 5.)  On December 24, 2010, Plaintiff filed a formal grievance against Vicklund.  On January 11, 2011, Plaintiff sent an inmate letter to Vicklund asking how ADC "establishes Islamic Religious Policy?"  (Id.)  On January 13, 2011, Plaintiff filed a grievance appeal.  On February 4, 2011, Plaintiff submitted a final grievance appeal.  On February 17, 2011, Plaintiff sent an inmate letter to Vicklund regarding the denial of a Halal diet and shaving waiver.  On February 23, 2011, Vicklund responded that the inmate letter concerned a grievance, which had to be processed through Plaintiff's grievance co-ordinator.  Plaintiff contends that Vicklund knew, or should have known, that his subordinate, Miser, had and was violating Plaintiff's religious exercise rights but failed to act to stop the violation.  (Id. at 4c, 4d.)

**Linderman**

On February 11, 2011, Plaintiff sent an inmate letter to Pastoral Administrator Linderman regarding "Islamic Representation, consultation, and denial of religious diet." (Id. at 3e.)  On March 25, 2011, Plaintiff received a response from Linderman stating, "there is a process by which you can have your concern addressed.  Please follow the process." (Id.)  On June 21, 2011, Plaintiff sent another inmate letter to Linderman in response to his

grievance A12119010 seeking a Halal diet and shaving waiver, "which was upheld by Director Ryan and M. Linderman." (Id.)  Plaintiff stated that a Halal diet was imperative to him as a Muslim and that he would not compromise his sincerely held beliefs.  On August 25, 2011, Plaintiff received a response from Linderman stating Plaintiff's request was not specified.  Plaintiff contends that Linderman acted in bad faith and failed to implement a Halal diet for him after his grievance was upheld.  (Id. at 4e.)

**Patton**

On July 7, 2011, Patton responded, on behalf of Director Ryan, to an inmate letter from Plaintiff, in which Plaintiff asserted neglect and disregard based on the denial of a Halal diet, "which was upheld" on May 25, 2011.  (Id. at 3f.)  In his response, Patton stated the following,

> You indicate your grievance is unresolved.  Pursuant to [Director's Order] 802.1.8 the decision of the Director is final and constitutes exhaustion of all remedies within the Department. *You have been approved for a religious diet*, as indicated in your inmate letter when Chaplain Miser met with you on 6/16/11 *and gave you the opportunity to receive a kosher diet, you did sign for the kosher diet.*  This should not burden your religious exercise to serve you the diet you requested.

(Id.) (emphasis added).  On July 13, 2011, Plaintiff sent an inmate letter to Patton informing him that he had never signed for a kosher diet due to a "religious verdict" of the Muslim scholars he consulted who advised him that a kosher diet was not religiously acceptable.  Plaintiff also included copies of those rulings with the inmate letter.  On August 5, 2011, Plaintiff received a response from Patton stating that, "'you requested a religious diet without further specificity.  If you don't wish the kosher diet, you may request a vegetarian diet.'"  Plaintiff contends that Patton violated his due process and equal protection rights where similarly-situated inmates receive a requested religious diet.

**III.   Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, to state a valid constitutional

claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.     Violations of Prison Regulations or Policies**

In each count, Plaintiff alleges that Defendants failed to comply with prison policies, procedures, or regulations.  The violation of, or non-compliance with, prison policies, practices, procedures, or regulations, absent more, does not rise to the level of a constitutional violation.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  Accordingly, to the extent that Plaintiff's claims are predicated merely on non-compliance with prison policies, procedures, or regulations, he fails to state a claim under § 1983.

**B.     Due Process**

Plaintiff asserts a violation of his due process rights based on the same conduct that he alleges violated his religious exercise and equal protection rights.  "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [under the Fourteenth Amendment]."  Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851, 853 (9th Cir. 2007) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)); see Albright v. Oliver, 510 U.S. 266, 273 (1994).

In this case, Plaintiff's due process claim is subsumed by the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause.  Accordingly, to the extent that Plaintiff asserts a violation of his due process rights, he fails to state a claim and his due process claim will be dismissed.

**V.     Claims for Which an Answer Will be Required**

Plaintiff alleges that Miser, Vicklund, Linderman, and Patton denied him a Halal diet and shaving waiver in violation of his religious exercise rights.  Plaintiff also alleges the absence of a compelling governmental reason for denying him a Halal diet and that such denial substantially burdened the exercise of his religion.  Plaintiff also alleges that he, as a

Muslim adherent, has been discriminated against based on his religion in that he is not provided a Halal diet while adherents of other faiths are provided religious diets consistent with their religions.  Plaintiff sufficiently states a claim for denial of a Halal diet and shaving waiver in violation of his religious exercise and equal protection rights against Miser, Vicklund, Linderman, and Patton.  Defendants Miser, Vicklund, Linderman, and Patton will be required to respond to those allegations.

**VI.   Warnings**

**A.   Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

**B.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.   Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.   Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     The Court withdraws the reference to the Magistrate Judge as to Plaintiff's motion for clarification, motion to amend, and the First Amended Complaint and as to Defendants' motion for clarification.  (Doc. 8-10, 13.)

(2)     Plaintiff's motion for clarification and to amend the Complaint are **denied**. (Doc. 8, 9.)

(3)     Defendants' motion for clarification is **granted** to the extent that the First Amended Complaint is screened.  (Doc. 13.)

(4)     Plaintiff's due process allegations are **dismissed** without prejudice.  (Doc. 9.)

(5)     Defendants Miser, Vicklund, Linderman, and Patton must respond to Plaintiff's religious exercise claims under the First Amendment and the Religious Land Use and Incarcerated Persons Act and his equal protection allegations under the Fourteenth Amendment.

(6)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 9), this Order, and both summons and request for waiver forms for Defendants Vicklund and Linderman.

(7)     Plaintiff must complete[6] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(9)     The United States Marshal must retain the Summons, a copy of the First

---

[6] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

Amended Complaint, and a copy of this Order for future use.

(10)　The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)　**A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(12)　Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13)　Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

does not identify the specific Defendant by name on whose behalf it is filed.

(14)    This matter is referred to Magistrate Judge David K. Duncan pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 23rd day of August, 2012.

Robert C. Broomfield
Senior United States District Judge