WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith P. Nance,<br><br>    Plaintiff,<br><br>v.<br><br>Allen Miser, et al.<br><br>    Defendants. | No. CV-12-0734-PHX-RCB (DKD)<br><br>**O R D E R** |

Plaintiff Keith P. Nance an inmate confined by the Arizona Department of Corrections (ADC), filed this *pro se* civil rights action. (Doc. 9.) Defendants—Allen Miser, Michael Linderman, Robert Patton, and James Vicklund—move for summary judgment.[1] (Doc. 54.) Plaintiff opposes the motion. (Doc. 59.)

The Court will dismiss the damage claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and deny the motion for summary judgment.

**I. Background**

In Count I of his First Amended Complaint, Plaintiff alleges that Miser, Vicklund, Linderman, and Patton denied him a Halal diet and shaving waiver in violation of his religious exercise rights. Plaintiff also alleges the absence of a compelling governmental reason for denying him a Halal diet and that such denial substantially burdened the exercise of his religion. He further alleges that as a Muslim adherent, he has been discriminated against based on his religion in that he is not provided a Halal diet while

---

[1] Pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), the Court notified Plaintiff of his obligation to respond to the motion for summary judgment. (Doc. 56.)

adherents of other faiths are provided religious diets consistent with their religions.

On screening under 28 U.S.C. § 1915A, the Court directed Miser, Vicklund, Linderman, and Patton to respond to the religious exercise and equal protection rights allegations and dismissed the remaining claims and Defendants. (Doc. 14.)

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot establish a free exercise or equal protection claim and that they are entitled to qualified immunity. (Doc. 54.) In support of their motion, Defendants submit their Statement of Facts (Doc. 55, (DSOF)), their Declarations *(id.,* Ex. C, Linderman Decl.; Ex. D, Miser Decl.; Ex. E. Patton Decl.; Ex. F, Vicklund Decl.), and other exhibits. In opposition, Plaintiff submits his Memorandum (Doc. 59), his Statement of Facts (Doc. 60 (PSOF)), Motions to Strike, with exhibits (Docs. 61-63), and 148 pages of other exhibits (Doc. 64).

## II.     Legal Standards

### A.     Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 250; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. *See* Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

### B. Free Exercise of Religion

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur*, 514 F.3d 884-85 (noting the Supreme Court's disapproval of the centrality test and finding that the sincerity test in *Malik* determines whether the Free Exercise Clause applies).

If the inmate makes his initial showing, he must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85.

A regulation that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). This determination requires analysis of four prongs: (1) there must be a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives. *Id.* at 90.

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). This "compelling government interest" and "least restrictive means" test replaced *Turner*'s "legitimate penological interest" test. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)). Under its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id.* at 995 (citing 42 U.S.C. § 2000cc-3(g)).

The inmate bears the burden of establishing prima facie that RLUIPA has been violated and that his religious exercise has been substantially burdened. *Warsoldier*, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). The government then bears the burden of proving that the substantial burden on the inmate's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so. *Id.* at 995 (citing 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)).

**C.  Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Shakur*, 514 F.3d at 891. An equal protection claim may be established by showing that prison officials intentionally discriminated against a plaintiff based on his

1   membership in a protected class, *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 601–02 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

In addition, an inmate "'must set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds* by *Shakur*, 514 F.3d at 884-85. Taking from *Turner*, the Court must consider whether "the difference between the defendants' treatment of [Plaintiff] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur*, 514 F.3d at 891 (citing *DeHart v. Horn*, 227 F.3d 47, 61 (3rd Cir. 2000)). A mere rational basis for disparate treatment of inmates of different religious faiths is not sufficient. *Id.*

### III.    Background Facts

Defendants assert that to accommodate inmates' religious needs, ADC offers a variety of methods for inmates to practice their chosen religion, including receipt of religious diet and other religious privileges. (DSOF ¶ 14.) They further allege that for more than 20 years, ADC accommodated Muslim dietary requests by providing the option of a pork-free diet. (DSOF ¶ 17.) About 10 years ago, ADC added a vegetarian option for Muslims, which they assert also meets Islamic standards by avoiding meat not properly blessed and slaughtered. (DSOF ¶ 19.) ADC does not offer a Halal diet but provides a Kosher or vegetarian diet for qualifying Muslim inmates. (DSOF ¶ 16.) ADC is currently instituting a new vegetarian diet program that has been certified by both Jewish (Kosher) and Islamic (Halal) representatives. (DSOF ¶ 20, Linderman Decl ¶¶

1  10, 12, 13, ADC Support Services Position Paper.) The religious diet program offers a
2  vegetarian diet that is not tied to any particular religion and is available to accommodate
3  a variety of religious beliefs. (DSOF ¶ 22.)

4  Plaintiff alleges that he is a practicing Muslim since 1986. (Doc. 9.) Between
5  2002 and 2008, he was in custody of ADC and was provided a Kosher or vegetarian
6  religious diet (ADC records are unclear which) and a shaving waiver, but not a Halal diet.
7  (DSOF ¶ 8.)

8  In September, 2010 Plaintiff was again committed to ADC custody to serve a 20
9  year sentence. (DSOF ¶ 9.) Shortly after his return to ADC, Plaintiff requested a
10 religious diet and shaving waiver on religious grounds. (DSOF ¶ 10.) In the course of
11 his shaving waiver and religious diet request, Defendants assert that they disputed
12 whether he had a religious reason for his request. Plaintiff alleges that Miser interviewed
13 him on or about October 31, 2010, and questioned his sincerity based on Plaintiff's re-
14 incarceration on a sex offense conviction. (Doc. 9; *see* Doc. 59 at 2, Exs. 3-7, Ex. 30.)
15 Plaintiff asserts that his new conviction is for kidnapping and domestic violence. (PSOF
16 ¶ 7; Doc. 63 Ex. 1.) The Director ultimately approved the shaving waiver and religious
17 diet on May 25, 2011. (Ex. 32 (Doc. 64 at 31).) On June 16, 2011, Plaintiff was offered
18 either a vegetarian or Kosher diet. (DSOF ¶ 12.) He accepted the shaving waiver but
19 rejected the Kosher or vegetarian diet, stating he wanted a Halal diet. (DSOF ¶ 11.) On
20 August 5, 2011, Plaintiff was informed by Deputy Director Patton, after consultation with
21 Linderman, that if he did not want the Kosher diet he could request a vegetarian diet,
22 which ADC also considers proper under Halal standards. (DSOF ¶ 12.) Plaintiff rejected
23 both options, and is currently not on any religious or special diet.

24 Defendants assert that at no time has Plaintiff or any other member of the Muslim
25 or legal communities indicated that Muslims are required to eat meat. (DSOF ¶ 18, Decl.
26 Linderman ¶ 11.) Plaintiff disputes this, alleging that he did indicate that Halal meat is a
27 religious dietary requirement. (PSOF ¶ 18, Exs. 20, 25, 44, 47, 49-51.) Plaintiff also
28

1 disputes that the Kosher diet and vegetarian diets offered meet his sincerely held beliefs
2 because he is commanded to eat meat that meat must be Halal.  (Doc. 59 at 5-6.)

**IV.  Discussion**

The Court will dismiss the damage claims under RLUIPA and deny the motion.

**A.  Preliminary issues**

Plaintiff files three motions to strike portions of the declarations of Patton, Linderman, and Miser.  (Docs. 61-63, respectively.)   Local Rule of Civil Procedure 7.2(m)(2) prohibits such motions, requiring that objections to the admissibility of evidence must be presented in the responsive pleading and not in a separate motion to strike.  The Court will deny the motions.  To the extent that the Court relies on any evidence to which either party has objected, the Court overrules the objection.

The Court declines to consider DSOF as undisputed, as suggested by Defendants. (Doc. 68 at 7.)  *Pro se* pleadings are liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (noting that the Ninth Circuit has consistently that held that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly); *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a duty to construe pro se pleadings liberally, including pro se motions").

**B.  Free Exercise**

**1.  Sincerely held belief**

Under both the RLUIPA and First Amendment analysis, Plaintiff must initially show that the religious practice at issue—consuming a Halal diet that includes Halal meat—satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief and not purely secular philosophical concerns. *Malik*, 16 F.3d at 333. The right to religious practice "is not limited to beliefs which are shared by all of the members of a religious sect." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 715-16 (1981). Plaintiff is therefore not required to

1  show that consuming a Halal diet that includes meat is mandated as a part of the Islamic
2  religion; rather, he is required to show that he sincerely believes that eating such a diet is
3  consistent with his faith. *Shakur*, 514 F.3d at 884-85.  Finally, the United States Supreme
4  Court has stated that the question of sincerity "is, of course, a question of fact." *United*
5  *States v. Seeger*, 380 U.S. 163, 185 (1965) (addressing sincerity of religious beliefs of
6  individual "is, of course, a question of fact.")

    The record shows that Plaintiff requested a Halal diet.  (*See e.g*., DSOF, Ex. B, Inmate Grievance, date 12/10/10, Assoc. Deputy Warden Resp., dated Feb. 14, 2011).  It does not show that he specifically requested a diet with meat, but it appears that until the Director upheld Plaintiff's grievance on May 25, 2011 (Doc. 64, Ex. 32 (Doc. 64 at 12)), the issue was not so much the specific content of the diet as the sincerity of Plaintiff's beliefs and his entitlement to any religious diet at all.  After the Director upheld Plaintiff's grievance, Miser offered Plaintiff a kosher diet on June 16, 2011, which Plaintiff rejected.  (DSOF ¶¶ 10, 12, Ex. B, Grievance (Doc. 55-1 at 33).)  Plaintiff was offered a vegetarian diet on August 5, which he also rejected.  (DSOF ¶ 12.)   The record also shows that Plaintiff apparently filed inmate letters thereafter claiming that the diet issue was not resolved; inmate letter responses in July and August state that Plaintiff did not specify the religious diet he wanted; that if he did not want the Kosher diet, he could have vegetarian diet that complied with Halal requirements; and that the decision of the Director was final.  (DSOF, Ex. B (Doc. 55-1 at 33, 34).)

    In his response to the motion, Plaintiff asserts that he defiles himself eating non-halal meats, which interfere with his spirituality and prayer life, and that he believes that the practice of eating Halal meats is a part of worship to Allah as established in the Qur'an.  (Doc. 59 at 5.)  He asserts that the standard and Kosher diets are haram (not permitted) and the vegetarian and vegan diets require that he forgo Halal slaughtered meat, which he believes he is commanded to eat.  (*Id.* at 5-6.)  Defendants argue that Plaintiff does not challenge the acceptability of ADC's vegetarian or vegan diets as

- 8 -

compliant with Halal requirements and provides no citation requiring him to consume meat. (Doc. 68 at 1.)

But the law provides that Plaintiff need do no more than represent that he believes that he must consume a Halal diet with meat to conform with his religious beliefs. As stated, it is improper for the Court to second-guess a particular individual's interpretation of his religious creeds. *Shakur*, 514 F.3d at 884. Further, Defendants' insistence that Plaintiff provide a "citation" or documentation to support his request or assertion that he must eat meat is much like requiring an inmate to establish that a requested accommodation is a mandated tenant of his faith. *See White v. Linderman*, CV 11-8152-PCT-RCB (SPL) (Doc. 68). That is not, and has not been, the law in this Circuit since the *Shakur* Court clearly explained that the Supreme Court disapproved the centrality test, finding it inappropriate for courts to "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Shakur*, 514 F.3d at 884-885. Defendants assert that they have specifically inquired into the question of whether Halal meat is required and found that the answer is no. (Doc. 54 at 6.) Not only do the cited SOF and Declaration not support the assertion (*see* DSOF ¶ 16, Linderman Decl. ¶¶ 8-9), the argument misses the point. The same is true regarding Plaintiff's refusal to accept a Kosher or vegetarian diet accepted by other inmates—that other inmates have accepted these diets does not establish that either diet conforms to *Plaintiff's* sincerely held religious beliefs. Finally, if it is Plaintiff's belief that he must consume Halal meat, a vegetarian diet plainly does not satisfy his religious diet requirements.

The Court is aware of two other cases where an inmate asserted a sincerely held belief that he must consume meat; in neither case did the court find that the belief was not sincerely held as a matter of law. In *Sefeldeen v. Alameida*, the Court of Appeals affirmed the district court's finding that the inmate did not properly exhaust the issue because he did not argue at the administrative level that vegetarianism violated his beliefs; complaints to prison officials at the administrative level focused on the perceived

1  nutritional inadequacy of the vegetarian diet, not that eating vegetarian meals violated his
2  religious beliefs.  238 Fed. App'x. 204, 206, 2007 WL 1585599, at *2 (9th Cir. 2007).  In
3  *Via v. Wilhelm*, the inmate asserted that his religious beliefs required him to eat Halal
4  meat daily.  2011 WL 5419709, at *5 (W.D. Va. Nov. 9, 2011).  In *Via*, the district court
5  noted that RLUIPA makes it clear that a particular religious practice need not be
6  mandated by a religion for the court to find a substantial burden on the inmate's religious
7  practice; the court assumed, without deciding, that there was a substantial burden, and
8  proceeded with the RLUIPA and First Amendment analyses.  (*Id.* at *6-*7.)
9  　　　　The Court finds that material questions of fact preclude summary judgment as to
10 whether Plaintiff's beliefs are sincerely held, and Defendants are not entitled to judgment
11 as a matter of law on this issue.

12 　　　　**2.　　　Substantial burden**

13 　　　　Next, Plaintiff must demonstrate that Defendants substantially burden the practice
14 of his religion by preventing him from eating a Halal diet with meat. *Shakur*, 514 F.3d at
15 884-85. A substantial burden exists where the state "put[s] substantial pressure on an
16 adherent to modify his behavior and to violate his beliefs."  *Thomas*, 450 U.S. at 717-18.
17 Even where the compulsion to modify behavior may be indirect, "the infringement upon
18 free exercise is nonetheless substantial."  *Id.* at 718.
19 　　　　If Plaintiff establishes that his need for a Halal diet with meat is a sincerely held
20 religious belief, denial of the diet is a substantial burden to his religious practice.  *See*
21 *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008) ("We have little
22 difficulty in concluding that an outright ban on a particular religious exercise is a
23 substantial burden on that religious exercise."); *see Via*, 2011 WL 5419709, at *5
24 (assuming without deciding there was a substantial burden where the inmate alleged he
25 must eat Halal meat daily but he was provided a soy-protein substitute).
26 　　　　Defendants argue that Plaintiff fails to understand that ADC has never offered a
27 Halal diet and that Muslims have not only historically accepted but specifically asked for
28 kosher and vegetarian diets to satisfy Halal requirements.  (Doc. 54 at 4-5.)  Inmate

Shakur, for example, requested a kosher diet which he claimed was permitted under the Qur'an. 514 F.3d at 882. Defendants further assert that Plaintiff has no explanation why he cannot eat the vegetarian diet. They argue that if the vegetarian or vegan options available are acceptable and comply with Halal restrictions by avoiding meat altogether, then there has been no substantial burden to his religion. But this argument ignores that Plaintiff asserts that he considers eating Halal meat something that he is required to do.

Defendants are correct that Plaintiff does not explain why the vegetarian diet is not acceptable. On the other hand, Defendants themselves assert that it is not "tethered" to any particular religion. Linderman attests that the vegetarian diet has been certified by both Jewish and Islamic representatives. (DSOF, Linderman Decl. ¶ 12.) But he provides no evidence to support a conclusion that relies on hearsay from unidentified persons; his declaration is not sufficient to establish that the vegetarian diet offered is either Kosher or Halal. In *Shakur*, the Court of Appeals criticized the district court's reliance on an affidavit that stated that the affiant's testimony was based not only "on [his] personal knowledge" but also on "consultation with [ADOC] staff, and research on the issues." 514 F.3d at 889-90. The Court noted that "[c]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient." *Id.*, additional citation omitted. At least one court has noted that not all vegetarian diets would necessarily comply with religious dietary restrictions. "It is certainly logical, however, that a Vegetarian Diet would (1) not consist of exclusively Kosher food; or (2) contain enough foods without yeast/leavening to satisfy Plaintiff's nutritional needs during the Feast." *Porter v. Wegman*, 2013 WL 3863925 (E.D. Cal. July 24, 2013).

The Court finds that on this record because Plaintiff asserts that consuming Halal meat is a sincerely held religious belief, whether or not the vegetarian diet complies with Halal restrictions, there is a triable issue of fact as to substantial burden. The Court must therefore evaluate the merits of Plaintiff's claim under both RLUIPA and the First Amendment.

### 3. RLUIPA Analysis

Defendants do not raise this issue, but this Court has consistently held that damages are not available against Defendants sued in their individual capacity under RLUIPA. *See e.g., White v. Linderman*, CV 11-8152-PCT-RCB (SPL) (Doc. 68); *Harris v. Schriro*, 652 F. Supp. 2d 1024, 1030 (D. Ariz. 2009); *Abdullah v. Schriro*, CV 08-0255-TUC-CKJ. Although the Ninth Circuit has not ruled on whether RLUIPA allows for money damage claims against state actors in their individual capacity, it has observed that four other circuit courts have held that RLUIPA does not provide for such claims against prison officials. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 n. 3 (9th Cir. 2011), citing *Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 2010); 328-29 (5th Cir. 2009); *Nelson v. Miller*, 570 F. 3d 868, 889 (7th Cir. 2009); and *Smith v. Allen*, 502 F.3d 1255, 1272 (11th Cir. 2007)). Other district courts within this Circuit have found that RLUIPA does not provide for individual-capacity damage claims. *See, e.g., Florer v. Bales- Johnson*, 752 F. Supp. 2d 1185, 1205-1206 (W.D. Wash. 2010); *Parks v. Brooks*, 2010 WL 5186071, at *1-2 (D. Nev. 2010); *Sokolsky v. Voss*, 2010 WL 2991522, at *2-4 (E.D. Cal Damages are also not available on official-capacity claims.) Damages are also not available for official-capacity claims. *Sossamon v. Texas*, --- U.S. ---, 131 S. Ct. 1651, 1663 (2011). Because damages under RLUIPA are not available as a matter of law, claims for damages under RLUIPA are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (where a plaintiff has been granted *in forma pauperis* status, regardless of any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action fails to state a claim on which relief may be granted). Plaintiff was granted *in forma pauperis* status. (Doc. 6.)

Although damages are not available in a RLUIPA claim, injunctive relief may be.

As noted, to analyze the merits of a RLUIPA claim, the Court determines whether Defendants' actions further a "compelling governmental interests" and do so by the least restrictive means." Defendants bear the burden on this, but here, they provide no

explanation other than that they have never offered a Halal diet, including one with meat. In addition to their argument that the Kosher and vegetarian diets are Halal, they also represent that although they offer a Kosher diet or vegetarian diet, the Director approved a Position Paper on June 14, 2013, instituting a new vegetarian diet program that has been certified by Jewish and Islamic representatives. (DSOF ¶ 20, Ex. G.) This program would eliminate the Kosher meat entrees and replace them with a vegetarian alternative. The Position Paper notes that this will result in substantial savings and eliminate Muslim inmate complaints about disparate treatment by providing Kosher for Jews but not Halal for Muslims. (*Id.*, Ex. G.)

The Court finds that even if cost savings are sufficient to constitute a compelling interest, here, there is no evidence regarding costs. *See Shakur*, 514 F.3d at 889-90; *see also Curry v. Cal. Dep't. of Corrs.*, 2013 WL 75769, at *9 (N.D. Cal. Jan. 4, 2013) (questioning whether negligible cost increase would constitute compelling interest but finding that a $50,000 to $60,000 increased expense for special diet is a compelling interest and collecting cases). Moreover, the Court must also find that Defendants' policy uses the least restrictive means to achieve its compelling interest. *See Warsoldier*, 418 F.3d at 998. The Ninth Circuit explained that, "[I]n light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison. RLUIPA requires more." *Greene*, 513 F.3d at 989-90. Prison officials must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Id.* at 990 (quoting *Warsoldier*, 418 F.3d at 999). In *Warsoldier*, the court specifically rejected the idea that courts must "completely defer to [prison officials'] judgment." 418 F. 3d at 1001.

Prison officials in *Curry* presented extensive evidence of the cost of providing a Kemetic religious diet and the time taken from security personnel to procure the foods, and, therefore, met their burden to show that the existing diet plan was the least restrictive means to further compelling government interests of cost containment and

security. 2013 WL 75769, at *9-10. Defendants here do not make the required showing of a compelling interest or that they considered and rejected alternative measures.

There are genuine issues of material fact on the RLUIPA claim for injunctive relief.

### D. First Amendment

#### 1. Constitutional claim

For Plaintiff's First Amendment claim, the Court must determine whether the burden on Plaintiff's religious exercise is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. Although Defendants make no specific arguments regarding *Turner*, the Position Paper suggests a legitimate interest in running a simplified food service and that by limiting the number of dietary options, they save money and eliminate complaints of discrimination. (Doc. 55, Ex. G.) Limiting special religious dietary options and thereby saving money serves a legitimate penological interest. *Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 1993). But, as noted, there is no admissible evidence of this claim. Moreover, the Court has already determined that there exists a material factual dispute whether Plaintiff has shown a sincerely held belief rooted in his religious faith that he must eat Halal meat.

The second *Turner* factor is whether Plaintiff has other means of religious expression. *Id.* at 877. Defendants offer no evidence on this point, although it is clear that Plaintiff now has a shaving waiver. Also relevant to this second *Turner* factor is "the distinction between a religious practice which is a positive expression of belief and a religious commandment which the believer may not violate at peril of his soul." *Ward*, 1 F.3d at 878 (considering an Orthodox Jewish inmate's claim that he was denied a Kosher diet). Plaintiff's claim implies that eating non-Halal meat requires him to violate his beliefs but that eating Halal meat is a positive expression of his belief; on the other hand, he alleges that eating Halal meat is commanded. *Compare Henderson v. Terhune*, 379 F.3d 709, 714 (9th Cir. 2004) (second *Turner* factor supports the plaintiff because, "[l]ike asking an Orthodox Jew to eat non-Kosher food, cutting [the plaintiff's] hair involves a

strict religious prohibition about the sanctity and purity of the body, and the concern we identified in *Ward* is heightened"). Here, on this record, it is difficult to weigh this factor.

As to the third factor—the impact of accommodating Plaintiff's request, because there is no evidence of cost, Defendants offer no admissible or specific evidence.

Plaintiff has not offered any "ready alternatives"—the fourth factor—to accommodating Plaintiff's First Amendment rights at a *de minimis* cost to prison resources. (Doc. 48 at 25-26). But the prison already serves a Kosher diet with meat to prisoners, and Defendants offer no evidence that providing Halal meals with meat would greatly tax prison resources.

There is insufficient evidence to rule as a matter of law that Defendants' religious diet policy is reasonably related to legitimate penological interests.

## 2. Qualified immunity

The Court finds that Defendants are not entitled to qualified immunity on the First Amendment damage claim for not providing a Halal diet with meat.

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The "qualified immunity inquiry" asks if the right was clearly established at the relevant time. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Id.* at 202 (emphasis added).

The Supreme Court established decades ago that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas*, 450 U.S. at 713-14. Further, for some time, but at the least since the 2008 *Shakur* decision, it has been clearly established that the First

1 Amendment protects a prisoner's sincere religious beliefs, not just central tenets of his
2 faith. 514 F.3d 884-85 (citing cases).  It is also clearly established that prisoners have a
3 right to meals that meet the dietary laws of their religion. *Ward*, 1 F.3d at 877.  And the
4 applicability of the *Turner* test to religious-diet polices challenged under the First
5 Amendment was well-established at least since *Shakur*.  514 F.3d 885-87.

6 Defendants' argument on qualified immunity is that there is no requirement that
7 prisons provide Halal meat and that historically Muslims have accepted Kosher and
8 vegetarian diets.  (Doc. 54 at 9-10.)

9 Defendants do not dispute Plaintiff's claims regarding the initial refusal in October
10 2010 to provide him a religious diet based on his re-incarceration.  A Grievance response
11 states that Miser did not know exactly what the sincerity issue was but that he believed
12 that because Plaintiff was released and came back on a new charge, he was not consistent
13 in practicing his faith.  (DSOF, Ex. B, Grievance Resp. (Doc. 55-1 at 27).)  As noted, the
14 Director granted plaintiff's request for a religious diet in May 2011.  Defendants make no
15 argument regarding qualified immunity for the period from October 2010 through May
16 2011.

17 Although prison officials may inquire as to an inmate's sincerity of religious
18 belief, *Cutter v. Wilkinson*, 544 U.S. 709, 725, n.13 (2000), the Court is unaware of any
19 authority even suggesting that re-incarceration is, by itself, evidence of insincerity.
20 Given that many inmates are incarcerated again after release, this appears to be an
21 especially dubious ground to deny a religious practice or accommodation.  Even non-
22 observance of a particular religious practice—e.g. consuming food inconsistent with a
23 religious diet—although evidence of insincerity of belief as to the need for the diet, is not
24 dispositive.  *See Curry*, 2013 WL 75769, at *7 (additional citations omitted).  The Court
25 cannot find that a reasonable prison official would have thought his conduct to be lawful
26 when the diet was denied based on Plaintiff's re-incarceration.

27 As to the denial of the Halal diet with meat, Defendants' argument appears to
28 assume that there was no substantial burden to Plaintiff's sincerely held beliefs because

other Muslim inmates did not require a diet with meat or because Defendants' inquiries demonstrate that consuming meat is not an Islamic requirement. But that is the wrong focus. Moreover, because the record does not show that Defendants considered any of the *Turner* factors, the Court cannot find that a reasonable officer would believe that his conduct was lawful in the situation he confronted.

### E. Equal protection

Defendants argue that to prevail on an equal protection claim it is not enough that Jewish inmates were able to obtain diets consistent with their faith. (Doc. 54 at 8.) They argue that Plaintiff received a good faith accommodation of his rights by providing him access to a Kosher or vegetarian diet. (*Id.* at 10.) They rely on *Curry*, 2013 WL 75769, at *16-17. (Doc. 54 at 8.)

As noted, to show a violation under the Equal Protection Clause, a plaintiff must demonstrate that the defendant acted with a discriminatory intent or purpose that was based upon the plaintiff's membership in a protected class, *Serrano*, 345 F.3d at 1082, and he "'must set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737.

Here, it is undisputed that Defendants offered a Kosher diet with meat to Jewish inmates but did not offer a Halal diet with meat to Muslim inmates. Defendants state that Muslim inmates accepted the Kosher diet or a vegetarian diet, but because the record shows that nothing else was available, without more, the Court cannot find that "the difference between the defendants' treatment of [Plaintiff] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur*, 514 F.3d at 891. As Defendants note, in *Curry*, the district court found no equal protection violation. But that court had already determined under the *Turner* test for the inmate's First Amendment claim and the evidence presented that there was a legitimate penological

1  justification for the religious-diet policy. *Curry*, 2013 WL 75769, at *16-17. Here, the
2  Court has already ruled that it cannot make a determination on the *Turner* test.

3        In addition, Defendants are not entitled to qualified immunity on this claim. The
4  record is too incomplete to find that they reasonably believed they had a legitimate
5  penological justification for providing a Kosher diet with meat but not a Halal diet with
6  meat.

7        Finally, it is unclear from the record if or when ADC will adopt vegetarian-only
8  Kosher and Halal meals. If both Jews and Muslims are provided only vegetarian
9  religious meals, there will be no equal protection violation. Courts have upheld religious
10 diet policies that provide for only vegetarian diets, including vegetarian Halal and Kosher
11 diets. *See Jackson v. Hill*, 128 Fed. App'x. 595, 2005 WL 823876, at *1 (9th Cir. 2011)
12 In *Jackson*, a Muslim inmate alleged an equal protection violation, arguing that prison
13 officials provided meat to Jewish inmates receiving a Kosher diet but provided only a
14 vegetarian Halal diet. The Ninth Circuit found no equal protection violation because the
15 defendants provided undisputed evidence that the Kosher diet contained no meat. *Id.*

16       **G.**    **Shaving waiver**

17       Defendants do not address and, therefore, do not dispute Plaintiff's claims
18 regarding the initial refusal to provide him a shaving waiver based on his re-
19 incarceration. Although he was eventually provided a shaving waiver, he was without
20 one from the end of October 2010 until the Director upheld his grievance on May 25,
21 2011. Having approved the shaving waiver, Defendants cannot now argue that he was
22 not entitled to it. Plaintiff's damage claim for the nearly 7-month delay in approving the
23 shaving waiver remains.

24 **IT IS ORDERED:**

25       (1)    The reference to the Magistrate Judge is withdrawn as to Defendants'
26 Motion for Summary Judgment (Doc. 54) and Plaintiff's Motions to Strike (Docs. 61-
27 63.).

28       (2)    Defendants' Motion for Summary Judgment (Doc. 54) is **denied.**

1  (3) Plaintiff's Motions to Strike (Docs. 61-63) are **denied.**
2  (4) Damage claims under RLUIPA are **dismissed.**
3  (5) The remaining claims are:
4      (a) the claims for injunctive relief under the First Amendment and
5          RLUIPA regarding the Halal diet with meat;
6      (b) the claim for damages under the First Amendment;
7      (c) the equal protection claim for injunctive relief and damages
8          for the Halal diet with meat; and
9      (d) the First Amendment damage claim for denial of the shaving waiver
10         for 7 months.
11 DATED this 7th day of October, 2013.

_____
Robert C. Broomfield
Senior United States District Judge